Thursday, March 17. The Judges delivered their opinions,
Judge Tucker,
after stating the case, proceeded as follows :
It has been settled upon solemn deliberation in this Court, that the assignee of a bond, may recover against his immediate assignor, if the bond be not paid, without any special undertaking on the part of the assignor to pay the money, in case it be not paid by the obligor. And this upon common law principles, because every assignment of a negotiable paper, (as a bond is in this country,) imports in itself a valuable consideration paid. In this case Mr. Goodall expressly acknowledges to have received such a valuable consideration. Upon common law principles, then, he is liable to make good the money, if not got of Beverley. The judgment and execution, with the return of the sheriff, shew that it was not to be had by the ordinary course of law. Was Stuart obliged to send a fieri facias into every County of the state, or an execution against his body, before he could resort to Goodall? I think not: for the execution and return of nulla bona thereupon must be considered as at least equal to a protest upon a bill of exchange or promissory note, as evidence of non-payment, or nonacceptance. The assignor may, by a special assignment, indeed, protect himself from a suit, until the assignees shall have done something more than the law requires in ordinary cases. And it is contended that he has done so, in this case, by declaring that he “ makes himself responsible “ should Beverley prove insolventBut this was the case *112 by the mere operation of law, without any such express agreement on his part; of course these words do not vary the nature of the undertaking. If indeed he had stipulated that he should not be responsible until it should appear that Beverley was totally insolvent, and that his body could not be taken in execution to satisfy the debt, these negative words might perhaps have altered the case, or at least have imposed it as a duty upon the assignee to pursue every species of execution to obtain the money, before he could resort to the assignor. But as the undertaking contains nothing more than what the law itself would have implied, he cannot shelter himself by the addition of these words to his assignment.
The question then is, whether in this action the Court ought to have admitted the evidence offered. If a sheriff make a false return upon a precept directed to him, any person aggrieved thereby may bring an action against him, and falsify his return by any evidence that he can produce for that purpose. But in a suit or contest between other persons, any fact, as between those persons, which is verified by the sheriff’s return, cannot, I conceive, be controverted ; for he is a sworn officer, and shall be presumed to have done his duty, until the contrary be proved, by a recovery against him for his false return. I therefore am of opinion, that the evidence was properly rejected, and that the judgment ought to be affirmed.
Judge Roane.
I cannot understand the assignment in this case as imposing upon the assignee any further or other terms or conditions than would have resulted by the construction of law from a general assignment. The insolvency intended by that assignment cannot reasonably be extended further in this case than in that; 1st. Because the analogy between this case and that is natural and apt; and Sdly. Because it is unreasonable to impose upon the assignee, who is generally a stranger to the affairs of the obligor, (whereas the obligee is supposed to be acquainted *113 with them,) the responsibility of knowing, finding out and pursuing all the effects of the obligor, wheresoever existing. I shall therefore not vary this case from the case of a general assignment.
In the case of Barksdale v. Fenvick, I had occasion to review the case of Mackie v. Davis,(a) and the general doctrine of the assignor’s liability. As a report of that case has never been published, and as some of my reflections in that case appear to me to apply to this, I will beg leave to refer to a part of my opinion delivered in that case.(1)
*114 In the case before us, it does not appear tliat thebe Was any defect of diligence, or that an injudicious course of execution was adopted. It is not shewn that the assignee any reason to believe that any other execution would more probably have produced the money, or that tlie as *115 signor gave any instructions on the subject. The appellee therefore has done all that was necessary, under the circumstances disclosed in this case, when he recovered judgment against the obligor, in the County in which he resided, and issued a fieri facias against his estate, upon which the return ©f nulla bona has been made.
I am of opinion, therefore, to affirm the judgment.
Judge Fleming.
In the case of Mackie v. Davis,(a) this general principle, that an assignor of a bond, where the obligor proves insolvent, is responsible to the assignee for the amount of the debt without any special undertaking to that effect, was settled by the unanimous opinion of the Court; and has not since been controverted. And it seems to me that when an assignee of a bond brings a suit against the obligor, and prosecutes it to a judgment, on which a fieri facias issues, he has done all that is incumbent on him to perform; and that, on a return of nulla bona on the fieri facias, he has recourse against the assignor, and may immediately institute his suit, and recover against him the amount of the bond and the costs of the former suit. As to the special assignment in this case, “ that Goodall should " be responsible in case Beverley should prove insolvent,” it seems to be mere surplusage, as the law would have made him so, unless there had been a special stipulation to the contrary. Mr. Stuart, the assignee, who was probably unacquainted with Beverley’s circumstances, was not to presume that the sheriff had made a false return, and on that ground, to order a second fieri facias, nor does it appear, that it was a false return. Beverley, if he had property in the County might have had the address to secrete it from the sheriff? and, if so, Goodall, who, it is presumed, best knew the circumstances of his debtor, ought, in order to exonerate himself from his responsibility, to have shewn the property (if any) to the sheriff. I am therefore of opinion that the Court very properly rejected the testimony *116 offered by the appellant, at the trial; and that the judgment ought to be affirmed.
By the whole Court, (absent Judge Lyons,) the judgment of the District Court was affirmed.

 2 Wash. 219.

 Here Judge Roane repealed part of his opinion delivered in the case of Barksdale v. Fenwick, as follows :
“ In the case of Mackie v. Davis, the general doctrine and ground of ** an assignor’s liability was considered and laid down by the Court. It “ is therefore unnecessary to go into that doctrine in the present case, “ further than (for myself) to explain one or two positions there stated.
“ In that case we were much pressed to lay down the precise line at “ which the assignor’s liability commenced; the criterion ascertaining “ wherein due diligence consisted : but the Court resisted the applica- ** tion, and left it upon the foot of due diligence, under all the circum- “ stances of each case.
“ In the case of bills of exchange and negotiable notes, it is more ‘‘ easy, and perhaps more necessary, to lay down a general rule upon " this subject, than in the case of bonds : more easy, because the diligence required in respect of them by the English law is more simple, “ consisting only in making a demand and protest: whereas in the case of bonds, it is necessary to sue in a reasonable time and in a judicious ‘‘ manner: more necessary, because bills and notes are more in the na- “ ture of currency than bonds ; circulate more rapidly and generally; “ and are more affected by the usage of merchants. The sanction of “ this Court has been given to a distinction in this respect, between the “ two securities, and particularly in the case of Norton v. Rose.(b)
(b) 2 Wash. 233.
“ The time, however, may come, when a more general transfer of “ bonds added to the real utility of having a certain rule, will make it c< necessary for the legislature, or for the Courts, if they have power, “ to fix a rule also in relation to the subject before us. I should find “ considerable difficulty in proposing such an one if it were now neces- “ sary; but perhaps one might be adopted by analogy to the act of “ 1794, enabling sureties in bonds to call upon the creditor to bring suit. “ Perhaps it would be a reasonable rule not to impute a want of dili- *114 “ gence in suing, until a refusal, after a request by the assignor; and “ further, that a return of “ nulla bona,’’ upon a fieri facias, should be « sufficient evidence of diligence, in pursuing the judgment, unless the “ assignor should have requested the assignee to sue out another kind of exe- “ cation. I throw out these hints, however, at present, merely for con- “ sideration.
“ The uncertainty under which the assignee now stands, as to what “ may or may not, in future, he deemed due diligence, by throwing a “ risk upon him, tends to produce a rigour of proceeding against the “ obligor,, which is hostile to the distinction between bills of exchange “ and bonds, before alluded to, and will probably tend to throw the lat- “ ter, whén assigned, into as rapid a course of prosecution as the “ former.
“ In the case of Mackie v. Davis, it is said to be the duty of the as- “ signee to bring suit. This is true as a general, though I think not as “ an universal proposition. There may be strong cases, (such for in. « stance as an absolute insolvency in the obligor .under the statute of “ bankruptcy, recently after the assignment,) jin which a suit would be “ entirely fruitless as against him, and might even produce injury to the “ assignor; for example, by postponing his recourse to. (possibly) an ul- “ terior and collateral indemnity; the fund for which might in the mean “ time be jeopardized and lost. It was said hy one of the appellee’s “ counsel, that it is not enough that a want of diligence be shewn to “ exist, but also that a loss ensued therefrom. The answer is, that it “ lies upon the plaintiff in the action after a neglect of duty is fixed “ upon him, to exculpate himself by shewing that due diligence would “ not have altered the case.
“ Nor is a return of nulla bona upon an execution in all cases sufficient. “ There may he cases in which a fierifacias would certainly be ineffectual, “ and another kind of execution certainly produce the money. A debtor, “ for instance, may not have an atom of-personal property, yet he may “ have a valuable estate in lands, or he may possess a place or office “ yielding him a considerable income, and which would be lost by his “ imprisonment. In these cases, the obligation to pursue due diligence, “ (which involves a judicious course of proceeding,) would point out to “ the assignee the propriety of deviating from the usual course of exe- “ cution.”

 2 Wash. 219.